CHANCERY.

*Case* 150.

## Ligon *et al. vs* Taylor.

APPEAL FROM THE LOUISVILLE CHANCERY COURT.

*Practice in Chancery.*

*May 4.*

JUDGE EWING delivered the Opinion of the Court.

Tho' the Chancellor may act with severity on points of practice, yet this Court will not interfere on account of such rigorous exercise of discretion, unless it manifestly appears that injustice has been done.

The affidavit of counsel that *he believes there was inequality in a division,* (without specification of facts, designation of witnesses and doesn-

WE think that the Chancellor, as a Court of equity of original jurisdiction, acted with severity in refusing time to take affidavits to sustain the exceptions. But much discretion is to be allowed with a view to a speedy adjustment of controversies; and this Court ought not to reverse for a rigid exercise of discretion in practice, unless it manifestly appears that injustice has been done.

The affidavit of the counsel is too general and indefinite against the report of the *three selected Commissioners,* and the affidavits of *six other witnesses* as to the equality of the division, to justify the interference of this Court. It only states the *belief* of the counsel that injustice has been done, and a belief that injustice can be shown by witnesses, without a specification of facts or a designation of witnesses by whom it can be shown, and

amounts to no more than *his opinion* that the division is unequal and unjust. His *opinion*, against so strong an array of witnesses on the other side, is not sufficient to justify a reversal; though he refers to the exceptions taken, and states his *belief* that they can be in the *main* sustained by proof, he does not state by what number of witnesses they can be sustained, or who the witnesses are, or what superior opportunity they had of knowing or ascertaining the value of the several portions allotted, over the witnesses who have deposed, so as to enable this Court to determine that injustice has been done, or that the result would be different if the decree was opened and indulgence allowed to take further proof. Upon such slender grounds, we do not feel at liberty to uproot the practice of the Chancellor, open his decree and send the case back for further *experiment*.

Decree affirmed with costs.

*Wheatley and Duncan* for appellants; *Guthric* for appellee.

> LIGON *et al.*
> *vs*
> TAYLOR.
>
> ments) amounts only to their opinion. These opinions against the report of three commissioners and an array of six witnesses is not sufficient to authorize this Court to interfere.

### PETITION FOR A RE-HEARING,
#### By Mr. Wheatley.

*May* 23.

The counsel for the appellants having read the opinion delivered by this honorable Court on the 4th May, 1842, feels it to be his duty to petition for a re-hearing of this cause.

The reasons which influence him to present this petition shall be briefly stated. It is the first time in the whole course of his practice as a lawyer, that he has ever presented such a petition; and such is his respect for the opinions of the members of this honorable Court, that he feels great diffidence and much reluctance in attempting to disturb an opinion given by a Court that he is well assured intended to do nothing but justice to the parties litigant; yet, inasmuch as he has resided about sixteen years in the immediate vicinity of the property in contest, and as he has had a good opportunity of knowing and properly estimating the value of that property; and further, as his attention has often been called to that property, he cannot be ignorant of its value, nor can he

Ligon *et al.*
*vs*
Taylor.

shut his eyes so as not to see and know the gross and manifest injustice done to his clients by the decree of division made in this cause by the Chancellor of the Louisville Chancery Court.

Believing, and in fact knowing, that said decree is unequal, partial, and unjust, and knowing that the opinion just rendered is *final*, and that it can never be changed by any subsequent suit; and knowing that his clients are most of them infants and all of them non-residents, the counsel for the appellants feels assured that this honorable Court will pardon his anxiety and solicitude for the interests of his clients, and will give to this petition a deliberate and patient consideration, even though an adherence to the opinion delivered must be the result. This honorable Court will no doubt recollect, that a suit betwixt the same parties in relation to a part of the same land, was tried at the      term, 18  . This suit was decided in favor of the appellants in this cause, and the claim in that suit set up by the appellee, John G. Taylor, against the estate of Daniel G. Puryear, deceased, was decided to be unjust; and in fact, the note upon which said claim was founded, was most clearly proved to have been a forgery. After the determination of that suit, it was agreed that the land in controversy should be divided, and to effect an amicable division with as little cost as possible, the bill, answer, and exhibits were filed simultaneously, and shortly after the Chancellor made an interlocutory decree or order, appointing commissioners to divide the land and improvements thereon. To this order or decree there was no objection made by either party. The commissioners made their report on Friday the      day of           1841—the report was ordered to lie over for exceptions one week, as usual. At that moment the counsel for the appellants rose and remarked to the Chancellor, that he was obliged necessarily to be absent from home for about ten days; that he was compelled to attend the Owen Circuit Court; wherefore, he requested that further time might be allowed him to file exceptions to the report of the commissioners, which he believed to be partial and unjust. This was a reasonable request; there is nothing in the record tending to

show any necessity for haste; it is not shown that either party would have been in the slightest degree injured by the indulgence asked for by the counsel for the appellants: but the Chancellor, without any good reason, refused to grant the indulgence, but remarked to the counsel that if he would write his exceptions to the report, and leave them with the Clerk, that they could be filed when the Court should sit again, and that then a reasonable time would be allowed him to take proof in support of his exceptions.

With this the counsel for the appellants had to be satisfied. He filed his exceptions with the Clerk; they were regularly filed in open Court on the Tuesday following, and on the same day an order was made by the Chancellor, (with a full knowledge of the absence of the counsel for the appellants) that six days be allowed the parties to take proof in support of, *and against the exceptions filed, which proof should be taken before the Master in Chancery, at his office in Louisville, and without notice.*

This honorable Court must know the distance from Louisville to Owenton, where the Owen Circuit Court is holden. It is about one hundred miles by the route usually travelled. The Owen Circuit Court usually continues in session about ten or twelve juridical days. The practice of the Circuit Courts generally, is first to dispose of the criminal business; next the civil cases at common law, and lastly to dispose of the chancery docket. The chancery suit of *Thruston, &c.* vs *Masterson, Chambers and others*, had recently been decided in this honorable Court in favor of the complainants, and was remanded to the Owen Circuit Court for further proceedings. It was an important cause involving a much larger amount of property than was in contest in this suit. The counsel was not only personally interested in that suit, but he was the sole counsel for the complainants in that suit, and therefore was necessarily compelled to attend the Owen Circuit Court until that suit was disposed of. All this was well known and stated to the Chancellor. Yet, under these circumstances, and in his absence, after the promise held forth to him that reasonable time

BEN. MONROE'S REPORTS.

should be allowed him to adduce proof in support of his exceptions, an order is made allowing only six days to take proof before the Master in Chancery, at his office in Louisville, and that too without notice.

Let it here be recollected that this extraordinary judicial order was made when the counsel for the appellants was one hundred miles distant from the place of taking the proof, and consequently knew nothing of that order; and that he confidently expected on his return to be allowed reasonable time to adduce proof in support of his exceptions. In his absence the appellees *selected* five or six witnesses; took their affidavits under the said order, and filed them with the Clerk. The counsel for the appellant returned home late at night on Monday, the day of the expiration of that *extraordinary judicial order*, sick and wearied; that it rained all the next day so as to prevent him from leaving his chamber; and on that day the case was, by the counsel for the appellees, submitted to the Chancellor for final hearing and decree.

Let it also be recollected, that the whole of the papers in the cause was, as is usual, sent to the residence of the Chancellor, where the counsel for the appellants had no opportunity of examining these *ex parte* affidavits, or of knowing what they contained, and that he never had an opportunity of seeing them until after the Chancellor delivered his final decree in the cause.

The constitution and laws of the land secures to the worst of criminals the right to be heard in their defence by themselves and counsel; yet this invaluable right, so important, is withheld from these poor women and orphan children; they, though poor and many hundred miles absent, are not allowed even one little week to adduce proof to sustain their exceptions, to assert their rights. Their counsel is deceived; he is promised ample time to adduce proof in support of his exceptions; confiding in that promise he leaves home; an order is made in his absence giving every advantage to his adversaries, of the benefit of which he and his clients are debarred by his absence. Had the Chancellor made known to the counsel for the appellants that only six days would be allowed to take proof before he left home, he might have

procured some friend to take proof for him in his absence; but no such intimation was given; and on his return the door to justice was closed against him, and against his unfortunate clients; and all this too was done in a *court of equity in an amicable suit.*

Well may this honorable Court, under such circumstances remark, that *"the Chancellor, as a court of equity of original jurisdiction, acted with severity in refusing time to take affidavits to sustain the 'exceptions."* But this honorable Court say, *"that much discretion is to be allowed with a view to a speedy adjustment of controversies, and that this Conrt ought not to reverse for a rigid exercise of discretion in practice, unless it manifestly appears that injustice has been done."*

The counsel for the appellants concur with this honorable Court, that much discretion is to be allowed with a view to a speedy adjustment of controversies, *when necessary*, when injury might result from delay; but permit me respectfully to inquire, what possible injury could have resulted from the delay of a single week. The dwelling house stands yet where it stood then; it is not injured or dilapidated; it looks as well as it did a year ago. The record shows that the dwelling house and land was in the possession of the appellee, Taylor; it is so al ledged in the bill, and not denied in the answers. If the delay operated as injurious to any persons it was to the appellants—no possible injury could have resulted to the appellees.

The affidavit of the counsel for the appellant is said to be too general and indefinite against the report of the *selected* commissioners, and the affidavits of six other witnesses. Let it be recollected that the *selected* commissioners were not sworn, and that the witnesses who gave their affidavits were *selected* by the appellee, John G. Taylor. The former suit between the same parties is a matter of record in this honorable Court, and may with propriety be looked into, because it was a contest betwixt the same parties in relation to the interest of Daniel G. Puryear, in the same land now in controversy. The appellee, John G. Taylor, in that suit suggests the death of D. G. Puryear, and charges that he died in debt

LIGON *et al.*
*vs*
TAYLOR.

to the said Taylor $1050, and exhibits a note for that amount, purporting to be the note of said Daniel G. Puryear to him for that amount. The appellants in the present suit, who were defendants in the former suit, deny that the note exhibited is the note of Daniel G. Puryear, deceased, and charge that it is spurious, and in fact a forgery. This allegation they clearly establish by proof, to the satisfaction of this honorable Court, notwithstanding the testimony of divers witnesses *selected* by this same John G. Taylor. The decree of the same Chancellor is therefore reversed, and the bill dismissed at the costs of Taylor. And now in this suit the same John G. Taylor is permitted to *select* his witnesses in the absence of the appellees and their counsel, and by an *ex parte* examination of these *selected* witnesses, to prove it to be *their opinion* that the division made by the commissioners is just and equitable. These witnesses give no description of the buildings, improvements or land; they are silent as to the size or probable cost of the buildings; it is, therefore, respectfully contended that the affidavits are too general and indefinite in support of the report of the selected commissioners; they only state the belief and opinions of the witnesses, without giving any facts or circumstances upon which their opinions are based. The counsel for the appellants respectfully suggests to this honorable Court, that the affidavit and petition for time was drawn and prepared under circumstances that precluded the possibility of said affidavit being more full, clear and definite. He was forced to draw it without having a single paper in the cause before him to aid him in his statement. He knew not how many affidavits had been taken and filed; nor did he know who the affiants were, or the contents of said affidavits; all these were in possession of the Chancellor, away from the Clerk's office. A final decree was about to be rendered, and, therefore, he was compelled to prepare his affidavit hastily, so as to prevent the rendition of a final decree. The best he could do was done. He prepared the affidavit charging that injustice had manifestly been done to his clients. He referred to his exceptions on file, which exceptions did minutely and particularly de-

scribe the improvements on the land, and gave their size, probable costs, and their value; and he stated on oath that if allowed a reasonable time, he could prove the inequality and injustice of the division, and *mainly, (that is substantially)* support the exceptions on file. He could not, under these circumstances, specifically state facts, or designate the witnesses by whom he could prove facts that might or might not be deemed material after he should have read the affidavits. The exceptions thus referred to in his affidavit, should have been read and taken as a part and parcel of his said affidavit, and thus viewed and considered. It is respectfully contended that said affidavit is, and was specific and definite, and did clearly show that the division was unjust and partial, and greatly injurious to the appellants. *Ex parte* affidavits are only resorted to in judicial proceedings, from necessity arising out of peculiar cases and circumstances. In disputes and controversies, involving important rights and interests, each of the parties litigant should have a right to see the witnesses, and to confront them face to face, to examine and cross examine so as to elicit the whole truth and nothing but the truth. To allow evidence taken *ex parte*, to be used upon a final hearing of causes involving great and important interests, would inevitably open the door to great injustice. Men disposed to act fraudulently, can at all times readily prove whatever they may wish to prove, if allowed to *select* their witnesses, and to take their depositions and affidavits in the absence of their adversaries. In such cases witnesses are often made to say what, upon a cross examination, they would repudiate or deny. The arguments of counsel in the first volume of the trial of Aaron Burr, show in strong language the great danger of placing reliance upon *ex parte* affidavits. The decree of division in this cause is wholly based upon the report of commissioners who were never sworn, and upon affidavits taken *ex parte*. If the decree should ultimately be affirmed, it settles the controversy forever; and whatever may be the injury sustained by the appellants, they are without remedy—most of the appellants are poor, the property in this controversy is nearly all they have upon

LIGON *et al.*
*vs*
TAYLOR.

earth. In seeking an equitable division of that property in an *amicable* suit, a hearing has been denied them; without any good reason for haste, their cause has been hastily tried and decided; they are greatly injured, and that too in a court of equity—so called. But it is asked, is there any probability, if a re-hearing is granted them and a reversal of the decree should result, that the appellants can show by a greater number of witnesses that the decree of division is unjust and partial. It is respectfully suggested that enough is in the record to induce a belief that the inequality of division can and will be proved by a host of witnesses; because in the record the improvements are accurately described. The appellees have not attempted, either by proof or otherwise, to deny the accuracy of that description. The common sense of every man (who will reflect upon the subject) will show that those improvements are worth at least three times the value set upon them by the commissioners— the land and improvements are situate in the suburbs of a large city; hundreds pass the land and buildings every day; thousands know the land and improvements well; give the appellants' only ten days to adduce proof in support of their exceptions and they ask no more—they are content that all the costs accrued, and to accrue, may await the final termination of the cause. If they fail most clearly to show the injustice of the division, they are content to be mulct in all the costs. The appellee, Taylor, has been in possession of all the land and improvements ever since the fall of 1836, and he is still in possession; he cannot, therefore, be injured by the delay. If a re-hearing is granted to the appellants, and the decree set aside, and the commission opened allowing both parties time to take further proof, the appellants are willing that this honorable Court may impose upon them such equitable terms and conditions as may seem right and proper.

## RESPONSE,

*June 4.*

By Judge Ewing.

The fact that the compl'ts counsel

In response to the earnest petition of the counsel for a re-hearing, we would barely remark, that it appears in

the record that the report of the commissioners showing the division, was placed in the hands of the counsel for the complainants several weeks before the report was made, and was permitted to remain with him up to the time of the report, and was then only drawn from him by a rule on the commissioners to show cause why they did not report. During all this time the counsel had full opportunity afforded him to inquire into and ascertain the facts that could be proven against the equality of the division, as well as the number and character of the witnesses by whom those facts could be established; and this was before he left the Court for Owenton. Nor can we doubt, that if an inspection of the papers could be deemed necessary to enable the counsel to procure other affidavits in corroboration of his own, or to point to the witnesses by whom the inequality could be established; that had he applied he would not have been refused by the Chancellor the inspection desired.

The petition for a re-hearing is overruled.

had possession of report of the comm'rs for several weeks, and then filed it in obedience to a rule on the commissioners to show cause why it was not filed, shows that complainant had ample time to show by affidavits the inequality of the division, which probably would have availed with the Chancellor.